Tii.ghman C. J.
The defendants took the ship of the plaintiffs on freight, to carry a cargo from Philadelphia to a port in Europe. In the agreement between the parties, it was stipulated, that twenty-five working days should be allowed for discharging the cargo, and in case of further detention, a demurrage of fifty dollars a day should be paid for every day of such detention, which should not be longer than thirty running days. The port of discharge was Cadiz; and during the twenty-five days allowed for the discharge of the cargo, the ship was lost in port. But, as we must now take for granted, there was time and opportunity for discharging the whole cargo, and the captain was ready to do it, but was prevented by the supercargo, to whom the cargo was deliverable by the bills of lading.
It may be assumed for the present, without deciding the point, that where there is no special agreement, a reasonable time is allowed for discharging the cargo; and if owing to the fault of the consignee, it is not delivered in that time, *H>e freight is earned and must be paid. It is said by Valin (1 Valin 624) that where the time for lading and unlading, is not fixed- by the charter-party, custom has established the period of fifteen days, after the expiration of which the master may demand damages, &c. But he does not say, nor is it said by any author that I know of, nor has it been expressly adjudged, whether the freight is earned, if the ship should be lost within the fifteen days, and before the cargo is delivered. In the case before the Court, we are relieved from all difficulty with respect to the time which might be thought reasonable at the port of Cadiz, because the parties have fixed it at twenty-five days. It has been contended on the part of the plaintiffs, that when the ship is safely moored in a place proper for delivery, and the captain offers to make delivery, the freight is earned. It appears to me that this is carrying the matter too far. The master is bound by the bill of lading to make actual delivery to the consignee, and if the consignee agrees to accept and the ship is lost before the delivery takes place, I cannot see *281 upon what ground the freight can be claimed. The delivery is as much a part of the contract as the carriage. But here the master tendered himself ready to deliver, and the consignee refused to proceed to the discharge, conceiving that by the terms of the agreement he was not obliged to unlade in less than twenty-five days. Almost all charter-parties ascertain the time to be allowed for loading and discharging, called lay-days. This is a very useful provision, and leaves no ground for dispute about custom or reasonable time. It is the act of the parties, fixing the time that they judge reasonable. There are two parties to a delivery, one delivers and the other receives; without a receiver there can be no delivery. Now it appears to me to be extraordinary, that the consignee should be under an obligation to receive, in a less time than has been stipulated. And if he is under no obligation to receive, upon what principle can he be subject to damage for not receiving? Why is he allowed twenty-five days, if the master may call ou him to receive the cargo in less than twenty-five days? The plaintiff contends, that no consideration is received by him for these twenty-five days, and that the sole object of this provision, is to fix the time when compensation for demurrage shall begin. As to the *consideration, the answer is plain, that thq freight was intended as a compensation both for the carriage and lay-days. The plaintiff’s construction deprives the defendants of almost the whole advantage of the twenty-five days. They insist that it is the duty of the consignee to receive the cargo, whenever the master is ready to deliver. If the delivery takes less than twenty-five days, the consignee can have no object in detaining the ship any longer, and the residue of the time is of no value to him. Another great objection to this construction is, that it leaves the parties exposed in case of loss, to all the inconvenience of litigating whether the cargo might not have beeu delivered before the loss happened; and how great that inconvenience is, has been fully exemplified in the present instance. A much more reasonable construction of the agreement is, that the consignee shall have the solid advantages of taking his own time, provided he does not exceed the stipulated lay-days. Upon that principle, if a loss happens before the lay-days are expired, the owner of the ship will be entitled to freight only for so much of the cargo as has been delivered. I give no opinion, what the law would have been, if the ship had been detained by the defendants beyond the lay-days, and the loss had happened during the thirty days allowed for demurrage. Neither is it necessary to give an opinion on the reasons *282 offered by the defendants in support of the motion for a new trial, because a new trial necessarily results from the decision of the point which was reserved. My opinion on that point is, that the plaintiffs are not entitled to recover in this action, because the freight is not earned.
Yeates J.
This action is brought to recover the freight supposed to be due on flour and wheat laden on the ship Apollo, on a voyage to Eayal, and from thence to Cadiz. A verdict passed for the plaintiffs, and a motion for a new trial has been made on five distinct grounds; but I shall content myself with expressing my opinion upon the point reserved on the trial. [His Honor then stated the facts.]
The question reserved was, whether on this state of facts, the defendants were liable for freight ? The Apollo performed in safety, with the goods laden on board, her voyage from this port to Eayal, and thence to Cadiz, in thirty-two days. *The freight agreed on in the bill of lading was at the rate of one dollar and seventy-five cents if the ship discharged at Eayal, and twenty-five cents per barrel for each subsequent port; and at the same rate for the wheat, calculating five bushels equal to a barrel, with five per cent, primage and average accustomed.
Whatever may be the gen'eral maritime law of affreightment, nothing is more certain than that the contracting parties may enter into such particular stipulations as they may think proper, not interdicted by the laws of the country where the contract is made; and such conventions will supersede the general law. In order to carry their agreement into full effect, according to their intention, it is obvious, that every word they have made use of, should be taken into consideration, and due weight given to each expression that is susceptible of a fair meaning. Twenty-five working days are here allowed for the discharge of her cargo; and she might be detained beyond that time a period not exceeding thirty running days, on payment of the agreed price of fifty dollars each day. Now the contract for the conveyance of merchandise is in its nature an entire contract; and unless it be completely performed by the delivery of the goods at the place of destination, the merchant will in general derive no benefit from the time and labor expended in a partial conveyance, and consequently be subject to no payment whatever, although the ship may have been hired by the month or week. The cases in which a partial payment may be claimed are exceptions to the general rule, founded upon principles of equity and justice, as applicable to particular *283 circumstances. Abbot on Shipping 224 (London ed.); 7 T. R. 381; Cook v. Jennings.
On the part of the plaintiffs, it has been contended, that the contract under consideration did not change the general law on this subject; and that the lay-days had no connection with the freight, which was not increased thereby;—and that there is no reason why the freight should remain in suspense at the risk of the ship owners for twenty-five tvorking days beyond the time, when the voyage had been performed in thirty-two days, and the captain was willing and ready to deliver the goods to the supercargo. But these remarks are plainly bottomed on a petitio principii. We well *know that in mercantile transactions, no risk is run without a premium proportioned to its extent. The allowance of the twenty-five days for the discharge of the cargo, is as much a part of the agreement, as that the ship should sail to her ports of destination; and the privileges secured thereby are evidently for the benefit of the shippers. Would it not be unwarrantable in us to infer that the owners of the vessel did not consider the risks attendant on this period of time, when they fixed the rate of freight ? The contract was entire, and must be complied with throughout. The ship owners knew, or were bound to know, the state of the ports to which she might proceed ulterior to Eayal, and subjected themselves to the risks which might be encountered within the stipulated portion of time for the discharge of the cargo. I thiuk it a fair and rational construction of the plaintiffs’ letter, that the supercargo, who was the immediate agent of the shippers on board the vessel, should have the option of determining at the port of discharge, when he would receive the cargo, provided he did not exceed the twenty-five working days secured to his constituents, including the ten days allowed at each of the ports he might stop at; and until the expiration of this time at least, the freight was not demandable. The supercargo might, if he thought proper, abridge this period by his own act: but he had it also in his power to insist during that period, that the goods should not be discharged from the hold of the vessel, and that she should for the intermediate time be considered as a store-ship at the risk of her owners.
In this view of the point reserved, I am of opinion, that a new trial should be awarded.
Brackenridse J.
The obvious construction of the terms ' of this contract, taken from the reply of the defendants to the letter of the plaintiffs, would seem to be, that the shipper *284 of the goods, the defendants, had a right to detain the vessel, the Apollo, on board of which the goods were shipped, twenty-five working days, at the port of discharge, deducting from those twenty-five, the days during which the vessel had been detained at one or two other ports at which she might have touched and been detained, for the sake of determining on the expediency of unloading, or proceeding further; *a^ eac^ one or two ports she had the privilege of detaining ten days, but these days to be reckoned part of the twenty-five ; so that at the port of discharge, if it should happen to be the third port, she would have but five working days, before the demurrage of thirty days would commence, for which fifty dollars per diem was to be allowed. It was within the twenty-five days, at not more than the third port, and before the days of demurrage had commenced, that the vessel was lost. But even had the days of demur-rage commenced, and not expired, it would seem to me that the defendant had the same right to the use of the ship, that he would have had, if sailing on the ocean, and before she arrived at any port. What is it whether she was in her dock, in the bay, or on the sea? It is the use and occupation of the vessel at the port, for the conveniency of waiting until a market should be determined on and made, that was contemplated. The length of the voyage depending upon winds, could not be comprehended under the terms of a contract; but the time of detention at a port or ports, could be ascertained. And this is the only object of the specification of time, so precisely apportioned, and stipulated in this contract. The freighter of the goods, the defendants, had twenty-five working days, at the port of discharge, including the days delayed at a first or second port, before the arrival at the port of discharge, which must be at least the third port at which the vessel might touch; and after this, thirty days more, under the denomination of days of demurrage, paying over and above the freight agreed upon, fifty dollars per diem. Not until after the expiration of the thirty days, if the defendant should choose to detain, can I consider the voyage as determined, so far as respects the freighter of the goods. As between the owner of the vessel, and the insurer on the vessel, it must depend upon the contract expressed or implied. The voyage may be considered as terminated, as respects the insurer, but not as respects the freighter of the goods. Eor the agreement to detain in port, looks to a time beyond the sea voyage; and during which, what can the vessel be as respects the defendant, but a store-ship for his *285 use, where his goods might remain until he could contract for their sale.
As has been argued, the contract is entire, and caunot be ^performed in part, unless the party in whose favor it is to be performed, should dispense, at any stage, with the completing or performance of the whole. I do not distinguish a contract to carry in a ship, from a contract to carry in a loagon ; the one a vehicle by land, the other by water; and the terms stipulating the use, subject to the same construction in the one case as in the other. The use must be completely afforded before the right to the hire can arise. The greater danger of a dock or of a bay than of the high sea itself, is a matter to which we must consider the contracting owner of the vessel to have looked in his stipulation. Were it not that books have been read, which would seem to imply that there is some difficulty in this case, I would be more confident that I am right in my ideas of the construction of the terms of this contract, which depends upon a few written words. But I am led to reflect with myself, who knows but that there may be some mystery in these maritime cases, which people at land, and who have not ventured out to sea much in commercial matters, I mean commercial law, or rather maritime, cannot comprehend; and which we must deduce from the law merchant or maritime, founded on principles sui generis, and peculiar to itself, arbitrary and consisting of positive rules, without a reference to reason and convenience ? On the contrary, so far as I have any knowledge of it, which I will acknowledge is much less than of some other parts of the law, my practice in the inland parts of the state not having led to it; but so far I say as I have any knowledge of it, there is no law that is founded more on principles of reason and convenience. Eor it is reciprocal and mutual accommodation that has begot it. It is founded in usage, and has its sanction in consent. A sense of mutual benefit and convenience is the foundation of the usage. But supposing the principles of this law to be arbitrary, and positivi juris, and not merely what usage has made them, I have been able to collect nothing from the books read or referred to, that at all militates with that construction which the reason of an uninformed man, well understanding the subject and canvassing it on the principles of convenience, would put upon the terms used in a mercantile contract; whether from the correspondence of the ^parties, or from those to which the contract has been formally reduced.
Having decided the reserved point in my own mind, *286 against the plaintiffs, it will be unnecessary to go into a consideration of the grounds of the motion for a new trial, on the score of evidence admitted contrary to law, or the verdict being against the weight of evidence, and the justice of the case. * Eor the reserved point being decided against the plaintiff, he fails in having a right of action. It was on this principle that I had understood it, that the reserved point was to have been argued first. How the argument for a new trial came to be proceeded on first, I have not been able to comprehend. There would seem to have been some misunderstanding, at least on my part, in the case. But this I remark only with a view to settle the rule in future; which, it would seem to me, ought to be, that in all cases where the determination of the reserved point, as in the present case, being against the plaintiffs, will determine their right of action, it ought to be argued before the motion for a new trial. But at the same time this general rule might be subject to an exception of the Court choosing to hear some discussion of the merits, or rather statement of the facts of the case, and the law arising on them, in the first instance. It will sometimes happen, that where justice is found, the Court may be justifiable in an astutia to support the action on a reserved point.
New trial awarded.